IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DANIEL CLIFFORD ALEXANDER,**

    **Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**                              **Case No. 07-cv-87-DRH**

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is petitioner Daniel Clifford Alexander's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to **28 U.S.C. § 2255** (Doc. 1). Alexander amended his habeas petition in order to incorporate an argument based on the United States Supreme Court's ruling in ***Cunningham v. California*, 549 U.S. 270 (2007)** (Doc. 2), and further supplemented his habeas petition (Doc. 3). The Government filed its Response in opposition (Doc. 6) and also a supplemental Response (Doc. 10). Thereafter, Alexander filed a Motion for Traverse (Doc. 11), to which the Government has responded (Doc. 12) and Alexander replied (Doc. 13). Lastly, Alexander has moved for appointment of counsel (Doc. 14). Although

Alexander seeks an evidentiary hearing, the Court has determined one is unnecessary for it to determine the 2255 petition and the Motion for Traverse on the merits.

Alexander was charged in the underlying federal criminal proceeding, *United States v. Alexander*, Case No. 05-cr-30197-DRH (S.D. Ill.), with one count of bank robbery in violation of **18 U.S.C. § 2113(a)**. Alexander pleaded guilty to the charge. His was an open plea – meaning that Alexander did not enter into a written plea agreement with the Government. Alexander was represented by an assistant federal public defender during his criminal proceedings. Because under the Sentencing Guidelines, Alexander qualified as a "Career Offender," his counsel advised that he enter into a "Sentencing Recommendation Agreement" with the Government (*see* Doc. 1, Ex. 1). In exchange for the Government agreeing to recommend a sentence of 120 months in light of the factors set forth in **18 U.S.C. § 3553(a)**, Alexander agreed to waive his appellate rights and his right to seek collateral relief. This Sentencing Agreement, dated June 29, 2006, was filed on the day of sentencing, June 30, 2006. Ultimately, the undersigned judge sentenced Alexander to 120 months' imprisonment, three years supervised release, with a fine of $500, restitution of $112 and a special assessment of $100. Judgment was entered on July 5, 2006. Alexander did not directly appeal this judgment. However, on February 1, 2007, he chose to file this habeas petition seeking collateral review of his federal sentence.

## II. Discussion

### A.  Section 2255

Alexander seeks collateral relief from his federal sentence, pursuant to **28 U.S.C. § 2255**, for ineffective assistance of counsel for advising him to enter into the Sentencing Agreement and for later refusing to make a direct appeal, given that Alexander believes he could have prevailed on appeal that he should not have received the "Career Offender" sentencing enhancement.

**28 U.S.C. § 2255** provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**Section 2255** provides an extraordinary remedy reserved to correct a narrow subset of judicial error.  Generally speaking, a **§ 2255** proceeding may not provide backdoor access for making the kind of garden variety arguments which could have—but were not—made on direct appeal.  **See Arias v. United States, 484 F.2d 577, 579 (7th Cir. 1973) (error which would require reversal on direct appeal is not reviewable on § 2255 motion unless the error is constitutional or jurisdictional in character);** *Belford v. United States*, **975 F.2d 310, 313 (7th Cir. 1992) ("nonconstitutional issues that could have been but were not raised on direct appeal" are not reviewable on § 2255 motion")**.  Moreover, the Seventh

Circuit has specifically held that errors in the determination of a sentence (without more) are not the proper subject matter of **§ 2255** review. ***See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations . . . [it] is rarely if ever the proper vehicle by which to challenge the application of a Sentencing Guideline provision where the sentence has become final and the petitioner did not directly appeal the issue");** *United States v. Wisch***, 275 F.3d 620, 625 (7th Cir. 2001) ("Allegations that the district judge misapplied the sentencing guidelines are not reviewable under § 2255.")**. However, certain constitutional claims are allowed whether or not they were made on direct appeal:

> Although nonconstitutional issues cannot serve as an independent basis for section 2255 relief, the fact that the nonconstitutional issues were not raised on direct appeal can be used as evidence of ineffective assistance of counsel. Ineffective assistance of counsel, because it is a constitutional issue, can in turn serve as a valid basis for section 2255 relief.

***Belford*, 975 F.2d at 313, n.1**.

Additionally, an evidentiary hearing on a Section 2255 Petition is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." **28 U.S.C. § 2255 (2006)**. The Seventh Circuit additionally requires a detailed affidavit to substantiate the Section 2255 Petition, so that Petitioner may not merely rest on "mere unsupported assertions." ***Barry v. United States*, 528 F.2d 1094, 1101 n. 31 & 32 (7th Cir. 1976)** *cert. denied***, 429 U.S. 826, 97 S. Ct. 81 (1976)**. Thus, an evidentiary

hearing is not mandatory but, rather, at the discretion of the district court. ***Prewitt v. United States*, 83 F.3d 812, 820 (7th Cir. 1996)(citing *United States v. Taglia*, 922 F.2d 413, 319 (7th Cir. 1991))**.

It is undisputed that Alexander did not directly appeal any of these issues, as he was told he waived his rights to directly appeal pursuant to the Sentencing Agreement. Therefore, the only issue for examination is whether Alexander received ineffective assistance of counsel when he was advised to enter into the Sentencing Recommendation containing such a waiver of his rights to appeal or seek collateral review.

**B.     Ineffective Assistance of Counsel**

The Sixth Amendment right to counsel is more specifically stated as the right to *effective* counsel. ***Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052 (1984)**. Therefore, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Id.*** Basically, the alleged error(s) must be so severe "that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment." ***United States v. Holman*, 314 F.3d 837, 839 (7th Cir. 2002)(citing *Strickland*, 466 U.S. at 689)**.

Under ***Strickland***, a party alleging ineffective assistance of counsel must prove (1) that the trial counsel's "representation fell below 'an objective

standard of reasonableness,'" and (2) "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843 (2002)(quoting *Strickland*, 466 U.S. at 688, 694);** *see also Davis v. Lambert*, **388 F.3d 1052, 1059 (2004)(citing *Strickland*, 466 U.S. at 688, 694)**.  The Court must keep in mind, however, that its after-the-fact review of counsel's performance is " 'highly deferential,'" and thus, counsel's conduct is afforded a "'wide range of reasonable professional assistance.'" ***Bell,* 535 U.S. at 702 (quoting *Strickland*, 466 U.S. at 689)**.  In other words, Petitioner must present evidence that, under the circumstances, conduct of counsel could not reasonably be considered "sound trial strategy." ***Id.  See also United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002)(citing *Strickland*, 466 U.S. at 689-90)**.

   1.   **The Validity of the Sentencing Agreement and its Waiver**

Alexander first questions the adequacy of his trial counsel's representation for advising him to enter into the Sentencing Agreement which he asserts is "not constitutionally enforceable", offering the case of ***United States v. Ben-Hur*, 865 F. Supp. 547, 549 (E.D. Wis. 1994)**, for the proposition that sentencing agreements are not valid when made after a defendant has been found guilty (Doc. 1, pp. 4-5).  Upon reading the opinion in the ***Ben-Hur*** case, the Court finds Alexander's synopsis of its holding incorrect.  Instead, ***Ben-Hur*** indicated that sentencing agreements *are* enforceable, but if entered into after a defendant had been

adjudged guilty, as opposed to entered into pursuant to a written plea agreement, then the defendant would not have a constitutional right to enforce the agreement should the Government not abide by its terms. ***Id.* (citing *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990))**.[1] Rather, the sentencing agreement will be governed by ordinary contract principles. ***Id.***

Alexander does not contend that the Sentencing Agreement is invalid due to a tenet of contract law, such as failure to accept the offer or lack of consideration. Instead, he believes it was unconstitutional that he be advised and agree to waive his rights to appeal or seek other collateral relief of his sentence. His argument is compounded by his belief that pursuant to the Supreme Court's opinion in ***Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008)**,[2] he should not have qualified as a "Career Offender," thereby receiving a lesser sentence. As such, Alexander argues his counsel was ineffective for advising him to enter into the agreement which has effectively tied his hands now from contesting his "Career Offender" status.

The Seventh Circuit has upheld such provisions which waive a

---

[1] In ***Ben-Hur***, the defendant was not seeking to get out of the sentencing recommendation agreement, but rather, wanted to enforce the Government's obligation thereunder to retain its prior sentencing recommendation, despite the fact that Defendant's case had been remanded for resentencing. ***Ben-Hur*, 865 F. Supp. at 548-49**.

[2] In ***Begay***, the Supreme Court held that a state felony DUI conviction was not to be considered a "violent felony" as defined by the Armed Career Criminal Act, **18 U.S.C. § 924(e)(2)(B)**. ***Begay*, 128 S. Ct. at 1588**. ***Begay*** thus shed new light on the interpretation of career offender enhancements, especially with regard to DUIs. ***See, e.g., U.S. v. Woods*, 576 F.3d 400, 403 (7th Cir. 2009);** *see also United States v. Patterson*, **576 F.3d 431, 440-41 (7th Cir. 2009)**.

defendant's right to appeal. **See *United States v. Bownes*, 405 F.3d 634 (7th Cir. 2005)**. Recognizing that a plea agreement (and therefore, a sentencing agreement) wherein the defendant waived his right to appeal, is governed by the principles of contract law (subject to the constitutional limits placed upon the criminal process), ***Bownes*** explained:

> In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

***Id*****. at 636 (noting that the defendant still maintained his constitutional right to appeal, regardless of the waiver, if his sentence if it was based on constitutionally impermissible criteria, such as race, or if it was in excess of the statutory maximum) (citations omitted)**.

The Court finds no reason why the Sentencing Agreement should be deemed invalid. Alexander offers no other legal theory except the holding in ***Ben-Hur***, which the Court finds does not render Sentencing Agreements invalid, per se. Instead, ***Ben-Hur*** acknowledges that Sentencing Agreements can be binding contracts. Here, Alexander bargained for a sentence recommendation of not more than 120 months. Without this Sentencing Agreement, the Government states that it could have recommended a sentence from anywhere between 151-188 months, due to Alexander's corresponding offense level and criminal history category (Doc. 6, p. 4, n.1). Alexander received the benefit of his bargain in that he was sentenced to 120

months' imprisonment. In exchange, he agreed to waive his direct and collateral appeal rights. As in **Bownes**, Alexander risked the possibility that he may have relinquished any valid grounds to appeal or seek collateral relief arising in the future. Just because the deal does not necessarily turn out as favorable to one of parties as originally intended is no reason to find that an agreement is *not* enforceable. Therefore, Alexander's trial counsel did not act unreasonable by entering into a Sentencing Agreement that was unenforceable, as the Court finds that it is, in fact, enforceable. So, too, is the waiver enforceable.

### 2. Counsel's Prudence in Advising Alexander to Agree to the Waiver

Next, Alexander contests the effectiveness of his trial counsel for advising him to enter into the Sentencing Agreement and to thereby waive all of his direct and appeal and collateral relief rights. This waiver estopped him from making a direct appeal regarding whether his "Career Offender" status was obtained in violation of due process. Continuing, Alexander contends that he was not charged by the Grand Jury with the greater offense of being a "Career Offender," the indictment made no reference to this sentencing enhancement status (U.S.S.G. § 4B1.1) nor did it contain the elements thereof. As such, Alexander argues his due process rights were violated by being categorized as a "Career Offender" for sentencing purposes without such facts being proved beyond a reasonable doubt to a jury beforehand (Doc. 1, pp. 6-13). Part and parcel of this argument is Alexander's further legal argument (and intended grounds for a direct appeal) that his prior misdemeanor offenses for driving while impaired ("DWI") should not have been

considered as "crimes of violence" for the purposes of qualifying him as a "Career Offender."

Alexander asserts that case law existing at the time counsel advised him to enter into the Sentencing Agreement supported his theory that his prior DWI's were not to be considered "crimes of violence" for purposes of establishing "Career Offender" status under U.S.S.G. § 4B1.1, citing ***Leocal v. Ashcroft*, 543 U.S. 1 (2004)** and ***Lopez v. Gonzales*, 549 U.S. 47 (2006)** (Doc. 1, p. 7). The Court finds neither of these cases to be helpful in aiding Alexander's argument regarding his ineffective assistance of counsel claim.[3] First, these two cases do not stand specifically for the proposition that DWI's are not to be considered as "crimes of violence" under the sentencing guidelines when determining "Career Offender" status. Second, ***Lopez*** was decided nearly half a year *after* Alexander entered into the Sentencing Agreement, so even assuming it was on-point, which is it not, it would not have been available for counsel's consideration before sentencing.

Interestingly enough, the Court notes that Alexander's counsel did file objections to the Presentence Investigation Report ("PSR"), dated June 19, 2006,

---

[3] ***Leocal*** held that a DUI offense did not fall within the definition of a "crime of violence" under **18 U.S.C. § 16**. The Supreme Court in ***Leocal*** did not extend the application of its holding to the Sentencing Guidelines, but in fact, actually distinguished the definition of a "crime of violence" in **§ 16**(b) (requiring a "substantial risk that physical force against the person or property of another may be used") from the Career Offender provision in U.S.S.G. § 4B1.1, finding that "crime of violence" in § 4B1.1 was more broadly defined as "conduct that presents a serious potential risk of physical injury to another." ***Leocal*, 543 U.S. at 10 n.7**.
    ***Lopez*** is also inapposite; it neither discussed DWI or DUI offenses "crimes of violence" or other means of obtaining "Career Offender" status. Instead, it involved the issue of whether conduct made a felony under state law but a misdemeanor under the Controlled Substances Act is a "felony punishable under the Controlled Substances Act," **18 U.S.C. § 924(c)(2)**. ***Lopez*, 549 U.S. at 50**.

which object to Alexander's classification as a "Career Offender" based upon his four prior state DWI convictions, as they should not be considered "crimes of violence" within the meaning of the Sentencing Guidelines (*see* Doc. 17 in *United States v. Alexander*, Case No. 05-cr-30197-DRH (S.D. Ill.)). Alexander's objections to the PSR went so far as to speculate that the Supreme Court would rule in his favor, if presented with the issue. However, his objections also acknowledged that Seventh Circuit controlling precedent, as set forth in **United States v. Rutherford, 54 F.3d 370 (7th Cir. 1995)** and **United States v. Sperberg, 432 F.3d 706 (7th Cir. 2005)** precluded the granting of his objection. Yet, he wished to make the objection to preserve it for possible further review at a later date.

Of course, the controlling precedent at the time Alexander was sentenced regarded DWI's as "crimes of violence" for the purpose of determining "Career Offender" status under the sentencing guidelines.[4] Knowing this, Alexander's counsel was still able to secure a sentence of at least 31 months less than he would have likely received without the Sentencing Agreement (120 months as opposed to the low end of the applicable guideline range, which was 151 months). Thus, considering there was no binding precedent which would support Alexander's objections and because counsel had no way of knowing that the **Rutherford** and **Sperberg** decisions would be abrogated by the Supreme Court's ruling in **Begay** several years later, the Court does not find Alexander's trial counsel acted objectively

---

[4] Consequently, his objection was not well-taken by this Court.

unreasonable in advising Alexander to enter into the Sentencing Agreement. Yes, it is true that had Alexander not entered into the Agreement and later directly appealed his sentence based on the ruling in **Begay**, he may have prevailed with a lesser sentence. However unfortunate, Alexander cannot use the benefit of hindsight to his advantage here. He was, or should have been, aware that there was always a chance a favorable ruling could be issued supporting his objections. Yet, no one knew whether that chance was microscopic or more than likely. What he did know for sure, at the time, was that if he entered into the Sentencing Agreement, he stood a very good chance of obtaining a sentence well below the minimum guideline range. The Sentencing Agreement even states, "[t]he Defendant . . . is fully satisfied with the representation he has received from his counsel, that they have discussed the Government's case, possible defenses and have explored all areas which the Defendant has requested relative to the Government's case and his defense" (Doc. 1, Ex. 1, p. 1 ¶ 1). Not that such a provision would deprive Alexander of his constitutional right to receive effective assistance of counsel, but it does indicate that he was fully informed of the risks of entering into such an agreement and did so knowingly.

Because the Court finds that Alexander's trial counsel's performance did not fall below the objective standard of reasonableness, his ineffective assistance of counsel claim fails to meet the first prong of the **Strickland** test. Thus, there is no need for the Court to further delve into the second prong of the test to determine whether there is a reasonable probability that, had Alexander's trial counsel not

advised him to enter into the Sentencing Agreement, whether he would have prevailed on his "Career Offender" argument either on direct appeal or via collateral review.[5]

## C. Denial of Due Process Regarding the Sentencing Enhancement

Alexander's argument that he was denied due process when his sentence was enhanced as a "Career Offender," without the benefit of being charged with the elements for this enhancement or having the elements proved beyond a reasonable doubt to a jury, is not part of his ineffective assistance of counsel claim. Therefore, because he did not bring it up on direct appeal due to his waiver and because he has not shown reason why it should be properly before the court on collateral review, as these ***Apprendi*** and ***Booker*** arguments are not retroactively applied, the Court is precluded from considering it. The same holds true for the arguments Alexander makes regarding the ***Cunningham*** case in his Amendment to the § 2255 petition (Doc. 2) and the ***Logan*** and ***Rodriguez*** cases in his Supplement (Doc. 3).[6]

---

[5] Although in a typical case, where a defendant's attorney refuses to file a direct appeal, this can be considered ineffective assistance of counsel *per se*, **see Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)**, the Court does not find it to be the case here, where a legally valid waiver of Alexander's direct appeal rights was in effect. Counsel's refusal to file a direct appeal regarding Alexander's objection to his "Career Offender" status was based on upholding the terms of the Sentencing Agreement.

[6] ***Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007);  *United States v. Logan*, 552 U.S. 23, 128 S. Ct. 475 (2007);  *United States v. Rodriguez*, 553 U.S. 377, 128 S. Ct. 1783 (2008)**.

**D.      Exceptions to the Waiver**

The Sentencing Agreement contained three exceptions to the appeal waiver, thereby allowing Alexander to appeal in the following circumstances: (1) if he was sentenced to a term in excess of the Sentencing Guidelines; (2) if there was a subsequent change in the interpretation of the law by made the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit, which was declared retroactive by those Courts, and which rendered him actually innocent of the charges; or (3) if there was a subsequent amendment to the Sentencing Guidelines which was intended to apply retroactively by the United States Sentencing Commission and arguably would constitute grounds for an appeal of his sentence (*see* Doc. 1, Ex. 1 - Sentencing Agreement, ¶¶ 2-3).

The Court finds no evidence that any of these three exceptions are applicable to Alexander's case.  He was not sentenced to a term in excess of the Guidelines range.  In fact, he was sentenced well below the range.  Therefore, the first exception does not apply.  The second exception also does not apply here.  ***Begay*** did change how courts now interpret DUIs and DWIs in terms of whether they constitute "crimes of violence," and while it is possible that it may be applied retroactively on collateral review, the opinion still does not render Alexander "actually innocent of the charges."  It is undisputed he was convicted of the DWI offenses.  Application of ***Begay*** would not reverse these convictions, it would only serve to not count these convictions towards his eligibility as a "Career Offender."

Nor would it serve to render him actually innocent of the charge in the underlying federal suit to which he plead guilty. Thus, the Court finds that Alexander's "actual innocence" argument made in his Motion for Traverse (Doc. 11) is also unavailing. As to the third exception, Alexander argues that Amendment 709 to the Sentencing Guidelines would aid his argument for recalculating his criminal history points (Doc. 3, pp. 4-5). However, as the Government correctly points out, Amendment 709 is not to be retroactively applied and since it was introduced after Alexander was sentenced, it is inapplicable (Doc. 10, citing **United States v. Alexander, 553 F.3d 591 (2009)**).

In sum, the Court finds that the Sentencing Agreement and its waiver provision is valid and remains legally enforceable. The Court does not find Alexander's trial counsel was ineffective under the **Strickland** standard for advising Alexander to enter into the Sentencing Agreement. Further, because the waiver of Aleander's direct appeal and collateral relief rights is valid, he is effectively precluded from considering arguments for collateral relief outside of his ineffective assistance of counsel claim, except for those three exceptions as outlined in the Sentencing Agreement which the Court finds inapplicable to the facts at hand. Lastly, the Court finds no need for an evidentiary hearing. As a final matter, the Court will now turn to Alexander's Motion for Appointment of Counsel (Doc. 14).

E.  **Appointment of Counsel**

Unlike a criminal proceeding, a Section 2255 suit, as it is a civil matter, does not constitutionally guarantee the petitioner appointment of counsel. ***Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992)(citation omitted)**. However, pursuant to Rule 8(c) of the Governing Rules of Section 2255 Proceedings, if a district court determines an evidentiary hearing is required, an indigent petitioner shall be appointed counsel. ***Id.* (citing Rule 8(c), 28 U.S.C. foll. § 2255)**.

Otherwise, the decision to appoint counsel to an indigent petitioner rests solely within the discretion of the district court. **18 U.S.C. § 3006A**. The Seventh Circuit has instructed district courts to consider when determining whether to appoint counsel: "(1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) capability of the indigent to present the case; and (5) complexity of the legal issues raised by the complaint." ***Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983)(citing *Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir.1983))**.

Here, the Court does not find the merits of Alexander's claim in his § 2255 petition to be colorable. Despite Alexander's assertions otherwise, the Court finds he has done an adequate job of briefing his issues in a relatively clear and concise manner, given his *pro se* status. It appears he has been able to access the

necessary case law to support his arguments. The Court does not feel that appointing counsel is necessary in order to obtain crucial facts or expose the truth, as Alexander has presented his case in a sufficient manner. Although he has not prevailed, this alone is not grounds to appoint counsel. Accordingly, the Court declines Alexander's current request for counsel.

### III. Conclusion

For the reasons as discussed herein, petitioner Daniel Clifford Alexander's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to **28 U.S.C. § 2255** (Doc. 1), Motion for Traverse (Doc. 11), and Motion to Assign Counsel (Doc. 14) are hereby **DENIED**.

**IT IS SO ORDERED**

Signed this 1st day of March, 2010.

/s/  DavidRHerndon
**Chief Judge**
**United States District Court**